**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| vs. | ) | |
| | ) | |
| EVEREST NATIONAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR BREACH
OF CONTRACT AND VIOLATION OF ILLINOIS INSURANCE CODE**

Plaintiff, Norfolk Southern Railway Company ("NSRC"), by its attorneys, Sean M. Sullivan, Heidi Hopson and Mohan Groble Scolaro, P.C., for its Complaint against Defendant Everest National Insurance Company ("Everest"), alleges:

**FACTUAL ALLEGATIONS**

***Summary of Claims***

1.      This is an action for breach of contract and bad faith under 215 ILCS 5/155 arising out of Everest's refusal to pay or reimburse attorney's fees and defense costs incurred by NSRC in the lawsuit entitled *Estate of Fairman v. Pacella Trucking, et al.*, No. 2023 L 012164, Circuit Court of Cook County, Illinois (the "Lawsuit") as required by the insurance policies described herein. Delontae Fairman ("Fairman") died from injuries sustained while operating a tractor-trailer in NSRC's railyard located at 350 West Garfield Blvd., Chicago, Illinois (the "NS Terminal") when his vehicle was struck by an NSRC train on May 26, 2022. Fairman's estate filed the Lawsuit against NSRC (and its affiliates), ITS Technologies & Logistics, LLC d/b/a ConGlobal ("ITS"), and Pacella Trucking Express, Inc. ("Pacella").

### *The Parties*

2.      NSRC is a common carrier by rail and a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business in Atlanta, Georgia. Pursuant to 28 U.S.C. § 1332(c)(1), NSRC is deemed to be a citizen of the Commonwealth of Virginia and the State of Georgia.

3.      Everest is a corporation organized under the laws of the State of Delaware, with its principal place of business in Liberty Corner, New Jersey. Pursuant to 28 U.S.C. § 1332(c)(1), Everest is deemed to be a citizen of the State of Delaware and the State of New Jersey and is not a citizen of either the Commonwealth of Virginia or the State of Georgia.

### *Jurisdiction and Venue*

4.      This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because the Lawsuit underlying this Complaint, and the acts associated therewith, occurred within this judicial district.

### *The Underlying Contract*

6.      At the time of the incident Fairman was operating the tractor-trailer at the NS Terminal on behalf of and under the direction of Pacella. At the time of the incident, ITS was conducting operations at the NS Terminal pursuant to an Operating Agreement dated September 13, 2021 (the "Operating Agreement"). (Exhibit A).

7.      Plaintiff in the Lawsuit alleged that the placement of multiple chassis and containers at the NS Terminal forced Fairman to drive onto a live railroad track where he became

"trapped" because of those chassis and containers and that his tractor-trailer was subsequently struck by a train. Pursuant to the Operating Agreement, the movement, parking, and placement of chassis and containers at the NS Terminal are performed by ITS.

8. Appendix C of the Operating Agreement required ITS to obtain certain insurance policies including a Commercial General Liability ("CGL") policy with a combined single limit of not less than $5,000,000 for each occurrence and a general aggregate limit of not less than $5,000,000. Appendix C further required that NSRC and its parent, subsidiary and affiliated companies be named as additional insureds under the CGL policy and that the CGL policy be primary and without right of contribution from any policies NSRC maintained.

### Everest Policies

9. Everest issued the following two general liability policies (the "53231 Policy" (Exhibit B) and the "59231 Policy" (Exhibit C)) to ITS:

Everest National Insurance Company
Commercial General Liability Policy No. RM8GL00053231
Policy Effective Dates: 5/19/23 to 5/19/24
Limits Each Occurrence: $2,000,000

Everest National Insurance Company
Commercial General Liability Policy No. RM8GL00059231
Policy Effective Dates: 5/19/23 to 5/19/24
Limits Each Occurrence: $750,000

10. The terms of the 53231 Policy and the 59231 Policy (together the "Everest Policies") are identical in all material respects. Section II of the general liability provisions of the Everest Policies (Who is an Insured) as modified by Endorsement CG 20 10 12 19 (Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization) provides that any person ITS has agreed in a written contract to be included as an additional insured is deemed an additional insured under the policy for liability caused, in whole or in part, by ITS's acts or

3

omissions in the performance of its ongoing operations for the additional insured. NSRC is an additional insured under the Everest Policies by virtue of the requirement in Appendix C, Section II.1 of the Operating Agreement.

11.     Pursuant to Endorsement ECG 20 661 08 21 of the Everest Policies the insurance provided to NSRC is primary and will not seek contribution from other insurance available to NSRC.

***Everest's Acceptance of NSRC's Tender***

12.     By letter dated April 18, 2025, NSRC tendered defense of the Lawsuit to Everest under the Everest Policies and demanded indemnity for any settlement or judgment arising out of the Lawsuit. (Exhibit D).

13.     By letter dated April 29, 2025, Everest declined NSRC's tender, referencing only the 53231 Policy and asserting that it had no duty to defend NSRC until exhaustion of a $750,000 self-insured retention ("SIR") listed in the policy. (Exhibit E).

14.     By letter dated July 30, 2025, NSRC again tendered its defense to Everest – specifically under the 59231 Policy which contained no SIR provision and under which Everest owed an immediate duty to defend NSRC. (Exhibit F).

15.     By letters dated December 8 and December 11, 2025, Everest responded to the tender under the 59231 Policy and stated, among reservation of various potential rights or defenses, "[i]n summary, Everest agrees to defend Norfolk with respect to the Lawsuit, subject to a full and complete reservation of rights." (Exhibit G). Everest conveyed the acceptance/reservation letter by email which stated "[a]ttached is the Everest Reservation of Rights wherein Everest agrees to participate in the defense of Norfolk Southern under a reservation of rights." (Exhibit H).

4

16.     At the time of the Everest acceptance NSRC's defense costs were being paid by West Bend Insurance Company ("West Bend"), as additional insured under a liability policy issued to Pacella. West Bend continued to pay all NSRC defense costs through January 8, 2026, when it paid out the limits of its policy in a settlement on behalf of Pacella. Upon information and belief, Everest did not pay or reimburse any of those fees or costs to West Bend or otherwise participate in NSRC's defense.

### Settlement of the Lawsuit

17.     Prior to the start of trial of the Lawsuit, Everest offered to the plaintiff the full limits of the Everest Policies as settlement on behalf of ITS and NSRC. The plaintiff rejected the offer. Thereafter, approximately one business day before start of the trial, Everest made the full limits of the Everest Policies available as part of a settlement offer on behalf of ITS only, which plaintiff in the Lawsuit ultimately accepted.

18.     On February 5, 2026, during the trial, NSRC and the plaintiff in the Lawsuit reached a settlement. At the time of the settlement, Everest had not paid any of its limits toward any settlement and therefore had not exhausted its policy. Everest did not pay its limits until all settlements were funded in March 2026.

19.     From the time NSRC tendered its defense to Everest, Everest had a duty under its policies to pay all defense costs incurred by NSRC and/or to share those costs with West Bend.

20.     Following the settlement, NSRC's defense counsel provided invoices for defense costs from January 8, 2026 (the date West Bend exhausted its policy limits) to Everest and requested that Everest pay those defense costs. (Exhibit I).

21.     Everest has not disputed its obligation under the Everest Policies to defend NSRC in the Lawsuit or withdrawn its acceptance of NSRC's tender. Nevertheless, to date Everest has

not paid any of the invoices submitted by NSRC's defense counsel or committed that it will pay all or any part of those invoices. Because Everest refused to pay those costs, NSRC paid the invoices directly to its defense counsel and now seeks and is entitled to full reimbursement from Everest.

22.     Defense fees and costs incurred and unpaid since January 8, 2026 are $541,805.30 as of May18, 2026, and NSRC continues to incur fees and costs because of Everest's conduct.

## COUNT I

### *(For Breach of Contract)*

23.     NSRC repeats and incorporates paragraphs 1 through 22 as and for paragraph 23.

24.     By virtue of the foregoing facts, Everest has materially breached the Everest Policies.

25.     Everest had and has a contractual duty under the Everest Policies to defend NSRC with respect to the Lawsuit including all costs and fees NSRC has incurred and is incurring.

26.     Everest has failed to defend NSRC in the Lawsuit, in breach of the Everest Policies.

27.     NSRC has performed all acts required of it under the Everest Policies. The defense fees and costs incurred by NSRC were reasonable and necessary in the context of the risks and exposure in the Lawsuit.

28.     Everest's breach of its contractual duty to defend NSRC in the Lawsuit has caused and will continue to cause NSRC to incur costs and fees, including attorney's fees that are Everest's responsibility under the Everest Policies.

29.     Based upon the Everest Policies, NSRC is entitled to damages from Everest in the amount of all attorneys' fees, costs and other expenses it has incurred or will incur in the defense

6

of the Lawsuit and in pursuing payment from Everest that have not previously been paid by other insurers.

WHEREFORE, NSRC prays for the entry of a judgment against Everest for breach of contract, in an amount to be proven at trial, for all attorneys' fees, costs and other expenses it has incurred or will incur in the defense of the Lawsuit and in pursuing payment from Everest, and for such other relief as the Court deems appropriate.

## COUNT II

### *(For Recovery Under 215 ILCS 5/155)*

30. NSRC repeats and incorporates the allegations contained in paragraphs 1 through 29 as and for paragraph 30.

31. Section 155 of the Illinois Insurance Code (215 ILCS 5/155) provides:

Attorney Fees.

(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

   (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

   (b) $60,000;

   (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

32. NSRC timely tendered defense of the Lawsuit to Everest and demanded insurance coverage as additional insured under the Everest Policies on April 18, 2025.

33.     Everest accepted NSRC's tender of defense and agreed that it would defend NSRC on December 8, 2025.

34.     By virtue of the facts set forth herein, Everest engaged in unreasonable and vexatious conduct including, but not limited to:

(i)     Everest delayed for over six months before it accepted NSRC's tender of defense;

(ii)    Everest has failed and refused to pay or reimburse any attorney's fees and defense costs incurred by NSRC in the Lawsuit.

35.     As a result of Everest's unreasonable and vexatious conduct, which is in breach of its obligations under the Everest Policies, NSRC has sustained monetary damages including the substantial costs incurred in defending the Lawsuit.

WHEREFORE, NSRC prays for entry of a judgment pursuant to § 155 of the Illinois Insurance Code for attorneys' fees, costs, other damages and a statutory award, and for such other additional relief as the Court deems appropriate.

**NORFOLK SOUTHERN RAILWAY COMPANY**

By:___/s/_____*Heidi M. Hopson*_____
        Heidi M. Hopson

Sean M. Sullivan
Heidi Hopson
MOHAN GROBLE SCOLARO, P.C.
55 West Monroe St., Suite 1600
Chicago, IL 60603
312-422-9999
ssullivan@mohangroble.com
hhopson@mohangroble.com

8